José E. Muñoz, Plaintiff and Appellee, *v.* Pan American Life Insurance Co., Defendant and Appellant.

No. 4802.   Argued February 5, 1931.—Decided April 30, 1931.

*O. B. Frazer* and *R. Castro Fernández* for appellant.   *Buenaventura Esteves* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action on an insurance policy where the first premium was paid to the agent of the company at the time the application was made, and there is no showing that the policy was ever issued. The district court found for the plaintiff. The defendant having appealed, the case was assigned to the writer of this opinion who submitted to this Court an extensive memorandum recommending the affirmance of the judgment appealed from. The memorandum was read to the judges in conference and submitted for their consideration. It was discussed several times, and the contrary view ultimately prevailed. Personally, I still think that the judgment of the district court is essentially correct; but I feel bound to acknowledge that from the way in which the issue was made and considering the little that the plaintiff succeeded in proving, the defendant company can not, under the law and the jurisprudence, be compelled to pay the claim made on the policy.

The facts, in brief, are as follows: The Pan American Life Insurance Company, of Louisiana, does business in Puerto Rico. Clifford S. Foy is its general agent, with an office in San Juan, and insurance solicitors under him work throughout the Island. One of them, Sampiero Giordani, called on the plaintiff, José E. Muñoz, and negotiated for him and his wife, María Ruiz Laguerre, a $5,000 joint policy which was issued by the company and rejected by Muñoz because the same had not been issued in accordance with his application. Giordani then induced Muñoz to apply, on May 5, 1926, for a $2,500 insurance policy on his wife only. On the same day, Muñoz paid the sum of $145.12 as premium by means of a check, which was cashed by Giordani. At the time the $5,000 policy was applied for, Muñoz and his wife submitted to a medical examination and a report thereon was forwarded to the company. No new medical examination was made when the $2,500 insurance policy was applied

for and the premium paid. Muñoz maintains that, in accordance with the instructions issued by the general agent himself, the original examination was sufficient if the application was filed before May 13, 1926, and as the application was filed on May 5, no new examination was either made or required. The company sought to prove at the trial that the failure to have a new examination made was the cause of the delay and of the failure to issue the policy. It seems advisable to transcribe at this stage the relevant part of the letter from the general agent to the plaintiff. It was dated in San Juan on May 12, 1926, and reads as follows:

"Dear Mr. Muñoz: I am in receipt of your esteemed favor of May 11, stating the reasons why the policy delivered to you by Mr. Giordani was not what you wanted, and I greatly regret that you have been so inconvenienced. Now, a 25-payment life insurance policy, with coupons, double indemnity and persistency bond, would cost you only $334.10 annually for $5,000, and $167.05 for $2,500. . . . Now, as your physical examination was made on January 29, the company has set May 13 as the limit for us to deliver and collect on that policy; therefore, I pray you to send me your check for $167.05 for a $2,500 policy, or for $334.10 for a $5,000 policy, so that I may be able to return the policy to the company together with your remittance, to be substituted by a 25-payment life insurance policy, with coupons, double indemnity and persistency bond, as above explained. If we wait until the 13th, we must then order a new examination to be made and that would be an inconvenience to you and to the physician. According to the information we have received from you, Mr. Muñoz, a $2,500 policy would be too small and, although we are willing to do as you wish in the matter, I am sure that you would be much more satisfied with a $5,000 policy. It would cost you only $334.10, which indeed is not an expenditure but a saving, and the more you save in this way the better not only for you but for your family. You must also take into account that the company has already accepted the examination made the other day and is willing to issue you a policy up to $10,000 without any further examination for the present; whereas, if you insured yourself for a lesser amount now with the idea of increasing it later on, you might not then be in such good health as at present and it would be more difficult to accomplish your purpose."

This letter, written on May 12, does not reveal with absolute clearness that the general agent was aware of the new application dated the 5th, but it states that, according to information received, a $2,500 policy would be too small, and this apparently shows that solicitor Giordani had communicated with general agent Foy. Besides, although in the letter a different course of action is urged, it is said: "We are willing to do as you wish in the matter." It has been insisted that the new examination was considered unnecessary inasmuch as a joint insurance of the spouses was contemplated, but the argument has not much weight, since the life of the wife would have been as much insured under one policy as under the other. In our view, the conflict was properly adjusted by the trial court. It seems indeed that the agents acted on the assumption that a new examination was unnecessary for the purpose of procuring the new policy. A second letter from the general agent to the plaintiff, dated in San Juan, May 17, 1926, supports this conclusion. It reads:

"Dear Mr. Muñoz: I am in receipt of your letter of the 14th. in which you advise me that all you want for the present is a $2,500 policy under the 25-year plan, to be cashed in 14 years. Most probably we will shortly receive that policy and I am sure you will find it exactly as requested."

What happened between the general agent and the company? Nothing is known for certain. The fact is that months passed and the plaintiff did not receive the policy, and that February 24 came when the wife died without the policy having reached the plaintiff. The latter made direct demands upon the company, and the result of his efforts is shown by the two letters transcribed below; one from the assistant secretary of the company and the other from the general agent, Foy. They read as follows:

"Dear Sir: Our President, Mr. Ellis, has referred to me your letter of March 15, with instructions to give it my best attention. The company has no record of having issued any policy on the life

of your wife, Mrs. María Ruiz de Muñoz. I find that on April 19, 1926, we issued two policies for $5,000 each under the endowment plan of twenty years, with coupons, jointly on your life and that of your wife, but these policies were returned for their cancellation and have never been in force. Later on Mr. Foy wrote us asking for the issuance of a policy on your wife's life and we answered and told him that in order to consider the matter it was necessary for your wife to be examined again. The report of this examination never reached us, and we then closed our files. I will refer your letter of March 15 to Mr. Foy, and I am sure that this gentleman will give the matter his immediate attention. Mr. Foy has the full confidence of the officers of this company, and if he received your check for $146.12 in connection with an application from your wife for a $2,500 policy, we know that the same will be immediately returned.''

''. . . . . . . . . . .

''Dear Mr. Muñoz: Referring to a letter which you wrote to the president of our company, Mr. Ellis, dated March 15, I wish to advise you that they state in their answer that, before a policy could be issued on your wife, it was necessary for her to submit to a new physical examination and a report thereon was never received. In view of this, and at the request of the company, our agents, Giordani and Fernández, who took the application, have forwarded to us the sum paid and I am inclosing herewith my check No. 5569 for $146.12 as a return of the amount deposited by you with them. I much regret to hear that your wife has died and still more that the policy was never issued by the company, and that in that way you lost the protection that you might have enjoyed.''

Thereupon the plaintiff brought the present action and prayed the court for a judgment directing the company to pay the policy in question.

The policy forming the basis of the contract sought to be enforced could not be produced at the trial. Indeed, everything leads to the belief that the policy was never issued by the company. The latter produced the application, and a substantial discrepancy is observed between the same, the complaint and even the judgment, as regards the beneficiaries, apart from the fact that it fails to contain all the particulars which it apparently called for.

The defendant-appellant, in its brief, assigns and argues in detail the following errors:

"1. The lower court committed prejudicial error in finding that there existed an insurance contract whereby defendant-appellant had insured the life of plaintiff-appellee's wife.

"2. The lower court committed prejudicial error in finding that the alleged insurance contract was verbally made, and accepted and ratified by the agent of the defendant-appellant.

"3. The lower court committed prejudicial error in finding that the receipt for the payment of the premium was never delivered.

"4. The lower court committed prejudicial error in holding the insurance application as accepted by the retention and use of the premium.

"5. The lower court committed prejudicial error in holding that it was the duty of the defendant to accept or reject the application with reasonable promptness and that the failure to reject it within a reasonable time raised the legal presumption that the application had been accepted.

"6. The lower court committed prejudicial error in applying the doctrine of estoppel to the defendant-appellant by finding that the latter had induced the plaintiff-appellee to believe that the life of his wife was insured.

"7. The lower court committed prejudicial error in finding that the beneficiary in the alleged insurance contract was and is the plaintiff-appellee."

We will not stop to consider separately each one of the errors assigned. We have transcribed them at length because they summarize all the questions involved and bring out their importance. For a reversal of the judgment appealed from, it should suffice to say that this is not an action in tort against the agents of the company or against the company itself, based on any damages caused to plaintiff by the conduct of the said agents or of the company. The action is founded upon the existence of a policy and it was necessary to show that the policy existed or should necessarily have existed.

The powers of the general agent of the company are not

shown, and it would be risky to hold that he had power to bind the company by his acts in a case like the present one.

But even conceding that he had such power, there would still remain the fact of the non-issuance of the policy by the company, of the nonacceptance of the application, and hence of the nonexistence of the contract which is sought to be enforced.

The points which most favor the plaintiff are found in the following passage excerpted from the opinion of the trial judge:

". . . the court thinks that it was the duty of the defendant to accept or reject the same with reasonable promptness, and its failure to reject it within a reasonable time raises the legal presumption that the application had been accepted.

"An insurer who receives an application for the issuance of a policy must either accept or reject the same with reasonable promptness and from his failure to reject it within reasonable time the law implies an acceptance. Robinson v. U. S. Benevolent Society, 132 Mich. 695.

"On the other hand, the acceptance of an application for insurance may usually be implied from the retention and use of the premium (14 R.C.L. 896), since the payment of the premium is the principal and perhaps the only consideration moving the insurer and upon which the promise of indemnity rests. (14 Cal. Jur. 419). On this point we also find that the following has been held:

"The receipt and retention of a premium does not necessarily indicate an acceptance of the application for insurance; but under some circumstances an acceptance may be implied from the receipt and retention or application of a premium. 32 C. J. 1105, 51 L.R.A. (N. S.) 873."

However, upon a closer investigation, we find that the law on this question has not been fully stated. For instance, the paragraph which includes the quotation from R.C.L. reads in its entirety thus:

"While it has been said that it is the duty of an insurer to which an application is made for a policy to accept or reject it with reasonable promptness, and that failing to reject within reasonable time, the law implies an acceptance, the overwhelming weight of

authority supports the rule that mere delay in passing on an application for insurance cannot be construed into an acceptance of it, especially where the applicant was not a proper subject of insurance."

Here great emphasis was laid upon the fact that the insured lady was pregnant at the time the application for insurance was made, and upon the prohibition to insure persons in that condition imposed on the company by its rules.

Furthermore, we have made an examination of the cases on which the quoted text from R.C.L. is based, and although particular pronouncements might be found favoring a case like that of the plaintiff herein, they would not be conclusive. Really, the existence of the policy sued on could not possibly be predicated, in view of all the attendant circumstances, on the mere delay of the company in taking any action either way and advising the insured accordingly.

By virtue of all the foregoing, the judgment appealed from must be reversed and another rendered instead dismissing the complaint, without special imposition of costs.